UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI ANN ARMSTRONG, a single individual, CHRISTOPHER EDWARD ARMSTRONG, a single individual,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KITSAP, et. al.,<br><br>Defendant. | No. CO4-5461 RBL<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |

This matter comes before the Court on Defendant's Motion for a Protective Order. [Dkt. # 18]. Defendants moved to protect police department internal files. Plaintiffs have moved to compel discovery of documents relevant to their 42 U.S.C. § 1983 civil rights action against the county and its police officers [Dkt. #24]. Plaintiffs allege excessive use of force in an incident between the parties. The Court has considered Defendants' motion, Plaintiffs' reply in opposition, and the remainder of the file herein.

**Background**

The Plaintiffs were contacted outside of their home by Kitsap County Sherriff's Department Deputies Gundrum, Miller, and McDonald on May 15, 2003. Plaintiffs allege Deputy Gundrum was verbally abusive and hostile with Lori Armstrong when he arrived. In response, she requested to speak to the deputies' supervisor and walked toward her home to call for him. Before getting there, she was stopped by Deputy Gundrum. Plaintiff alleges that at this point Deputy Gundrum grabbed her by the back of her head and then "ripped" her injured arm behind her back. She then claims that Deputy Gundrum slammed her into a car and when her son, Chris Armstrong, attempted to intervene, he too was body-

ORDER

slammed into a nearby fence. Nearly two years after this incident, on February 14, 2005, a police officer (who did not identify himself or his purpose) visited the home of the Plaintiffs and inquired about Chris Armstrong.

Plaintiffs allege excessive use of force by the Defendants on May 15, 2003. They have moved to discover personnel files and Kitsap County Police Department internal investigation files relevant to the incident. In a Fed.R.Civ.P. 37 Discovery Conference, Plaintiffs agreed to narrow the scope of their discovery request. From the personnel files, they request records of complaints, disciplinary actions, and training of the named defendants. Medical records, pay grades, and strictly personal information are no longer sought [Dkt. # 19, Exhibit #3]. The remainder of their request is for all complaints, disciplinary actions, and internal investigations regarding the named Defendants. The request is not limited to similar or legitimate complaints, and the request includes files post-incident (May 13, 2003).

**Analysis**

Defendants support their motion for a protective order with two arguments. First, Plaintiffs are not entitled to discovery of records that are exempt from disclosure under Washington state law RCW 42.17.310. Second, unsubstantiated complaints, post-incident complaints, and unrelated complaints are not relevant. Each argument is addressed in turn.

**1. State law privileges**

A § 1983 action raises a federal question. As such, privileges and discovery are determined by federal common law. *See Soto v. City of Concord,* 162 F.R.D. 603, 609 n.2 (N.D.Cal. 1995) (citing *United States v. Zolin,* 491 U.S. 554 (1989); *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1519 n.6 (9th Cir. 1987)). The federal policy on discovery is a liberal standard. *Id.* Relative to privileges, Washington state law is inconsistent with the intent of Fed.R.Civ.P. 26(a). Applying Washington state law, particularly RCW 42.17.310 and 42.17.260, would severely limit Plaintiffs from gaining access to information regarding the police dispute. *See, e.g., Id.; Miller v. Panucci,* 141 F.R.D. 292, 298 (C.D. Cal. 1992) (holding state law would not allow plaintiff in § 1983 excessive force case to discover relevant documents). This is not consistent with the general policy of broad discovery as outlined in Fed.R.Civ.P. 26(a). *See Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal. 1987) (leading case in discovery disputes in § 1983 actions, holding "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases."). Washington state law does not provide Defendants with a

ORDER

privilege for the requested items.[1] *Id.*

### 2. Overbreath and relevancy of contested discovery requests

Defendants' second argument cannot be answered without addressing each disputed discovery request on an individual basis.

### Request For Production 10

"Please request true, complete, and accurate copies of the personnel files for the named defendants and any other employees on duty who responded or assisted when Plaintiff Lori Armstrong was cited on May 16, 2003."

Defendant objects that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

The scope of discovery under the Federal Rules is "extremely broad." *Soto v. City of Concord,* 162 F.R.D. 603, 610 (N.D.Cal.1995). A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). The question of relevancy should be construed "liberally and with common sense." *Miller,* 141 F.R.D. at 296. Therefore, discovery should be allowed unless the information sought "has no conceivable bearing on the case." *Soto,* 162 F.R.D. at 610. This is the standard by which relevancy is judged for discovery.

In an excessive force case, the personnel files of the involved officers are relevant. *See Soto,* 162 F.RD. at 615; *accord Hampton v. City of California,* 147 F.R.D. 227, 229 (S.D.Cal.1993). Personnel files contain information which appraises the aptitude of officers, including their work ethic, decision making abilities, and crime scene management. *Soto,* 162 F.R.D. at 615. This information, and the documents which describe it, "may be quite relevant to issues involved in Plaintiff's excessive force claim, because such documents may reveal the defendant officers' patterns of behavior as well as the City's response to such behavior." *Id.* Both of those patterns are questioned by Armstrong. Thus, the Production Request 10 is reasonably calculated to produce relevant materials.

---

[1] Defendant argues that state law, if its role is reduced by federal law when addressing privileges in discovery, retains some force. *See Kelly,* 114 F.R.D. at 656. While this may be true, this Court ultimately decides how much force it retains. *Id.* ("Ultimate responsibility for deciding how much weight to ascribe to such [state-created] interests, and how that weight compares with the significance of competing interests, must reside with the federal courts.")

ORDER

Defendants argue that in addition to not being relevant, the requested information infringes upon their privacy interest. The resolution of a privacy objection requires a balancing between a need for the information sought and the privacy right being asserted. *See Hampton v. City of San Diego,* 147 F.R.D. at 227, 230 (S.D.Cal.1993). Here, the Plaintiffs' need for the files is great. *See Soto,* 162 F.R.D. at 617 (describing similarly situated plaintiff as having a "great" interest in discovery of police personnel files). It sufficiently outweighs the County's interest in retaining the files. *See Kelly,* 114 F.R.D. at 667 (stressing the overwhelming public interest in uncovering civil rights violations by police officers). Furthermore, the parties have agreed that Plaintiffs are not seeking medical, dental, retirement benefits, or pay grade files. These are the files which Defendants have the highest privacy interest in. But they are not at issue. Because Plaintiffs' need for the files exceeds Defendants' privacy interest in them, the files cannot be protected on the basis of a privacy concern.

**Request For Production 11**

"Please produce true, complete, and accurate copies of all disciplinary reports and/or documents relating to any and all of the named defendants in this matter."

Defendants object that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Defendants argue that unrelated and unsubstantiated complaints are not relevant. Though this Court employs a broad definition of relevancy for purposes of discovery, the Defendants' argument here has merit. Plaintiffs' request is overly broad in two respects. It does not specify the time period from which it seeks materials and it is not limited to similar accusations.

Plaintiff may discover actions of a similar nature as those alleged. *See Kelly,* 114 F.R.D. at 671 (limiting the scope of discovery to complaints of excessive force when excessive force was alleged.) Other types of misconduct are not relevant to Plaintiff's cause of action. That is, Plaintiff cannot seek discovery of general misconduct, such as evidence spoliation, if it is not alleged. *See Id.* Any deficiency the Defendants might have in addressing alleged excessive force violations can be ascertained by investigation

ORDER

of only excessive force allegations. *Id.*

Documents which detail a possible deficiency in the Department's training and supervision in regard to excessive force are relevant when the Department is named as a defendant. *Miller v. Pancucci,* 141 F.R.D. 292, 296 (C.D.Cal.1992). But the entire history of the Kitsap County Police Department is not being challenged in this case. Only the history of each defendant and the department's respective response to other possible misconduct is at issue. Plaintiff's request is over-broad and not relevant beyond this time frame. Thus, the scope of Plaintiffs' request is limited to relevant files dating as far back as the first hiring amongst the group of named Defendant officers. Discovery is limited to this starting point. The parties disagree about the end point of the relevant time period.

Defendants assert that any post-incident (May 16, 2003) complaints are not relevant. Plaintiffs respond that the second incident between the parties makes this group of complaints relevant. On February 14, 2005 an unidentified officer made an unrequested visit to Lori Armstrong's home. Given that the 2005 incident involved some of the same parties named in the complaint and a full explanation of the incident is lacking, the Court is satisfied that materials post-incident (2003) up until and including the second incident (2005) are relevant. The second incident is the appropriate bookend for the relevant time period of discovery.

Unrelated and unsubstantiated complaints (provided they are consistent with those alleged) within this time range are relevant. Considering the scope of discovery permitted under Rule 26(b), the Court finds that documents describing unsubstantiated complaints are relevant. Complaints against officers involved in the May 16, 2003 incident may show, among other things, the character or proclivity of such officers toward violent behavior or possible bias. *Soto,* 162 F.R.D at 620; *Hampton,* 147 F.R.D. at 229; *see also* Fed.R.Evid. 404-406, 607-608. By extension, unrelated complaints and unsubstantiated complaints not related to the named officers, but relating to the Department in general, are relevant. *Miller,* 141 F.R.D. at 296. There is a significant likelihood that they could lead to evidence admissible under Fed.

ORDER

R.Evid. 404(b). However, Defendants are required to produce only unsubstantiated claims closely related to Plaintiffs' complaint: excessive use of force, limited to physical use of force.

**Request For Production 13**

"Please produce true, complete, and accurate copies of all Incident Performance Reports (IPR) on all named defendants regarding the incident of May 16, 2003 involving Plaintiffs."

Defendant objects for the same reason as the first two requests. The Court cannot agree. Police Department files which describe the incident in question are relevant in an excessive force case. *See, e.g., Soto,* 162 F.RD. at 611.

As a final matter, the legitimate privacy interests of the Defendants and private citizens unrelated to the 2003 and 2005 incidents can be met by a tightly drawn protective order. *See Soto,* 162 F.R.D.at 616 (citing *Kelly,* 114 F.R.D. at 662). The parties are hereby instructed to draft a protective order detailing an agreement in which the discovered materials are used only by the Plaintiffs and their attorneys and promptly returned to the Defendants upon the resolution of this matter. Private information pertaining to unrelated private parties should be redacted.

Defendants' Motion for Protective Order is **GRANTED** in part and **DENIED** in part. Discovery is **ORDERED** to proceed in accord with the determinations herein. The Court declines at this time to do an *in camera* review of the documents provided by Defendants. The clerk of the court is instructed to send uncertified copies of this Order to all counsel of record.

DATED this 27th day of April, 2005.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER