UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI ANNE ARMSTRONG, et al<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KITSAP, et al<br><br>Defendants. | Case No. C04-5461 RBL<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendants Kitsap County, Deputy Mark Gundrum, Deputy Joshua Miller, Deputy Krista R. McDonald, Sgt. Hytinen, and Sheriff Steven Boyer's motion for summary judgment. (Dkt. No. 77). Defendants seek a ruling as a matter of law that: 1) Plaintiffs Lori Armstrong and Christopher Armstrong's summary judgment response should be stricken as untimely; 2) qualified immunity shields Deputies Gundrum and Miller from liability on Plaintiffs' excessive force and unlawful seizure claims; 3) Plaintiffs' remaining §1983 claims should be dismissed; 4) Plaintiffs' claims for First, Fifth, Sixth, Eighth[1], and Fourteenth Amendment violations should be dismissed; Plaintiffs' claim for

---

[1] The Eighth Amendment's protection against cruel and unusual punishment is inapplicable to Plaintiffs because it applies only to those convicted of a crime. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979); *Soto v. City of Sacramento,* 567 F. Supp. 662, 671 (E.D. Cal. 1983). Plaintiffs were never convicted of a crime. Accordingly, any claims under the Eighth Amendment must be dismissed.

ORDER
Page - 1

municipal liability should be dismissed; and 5) Plaintiffs' remaining state law claims for negligent hiring, training, and supervision, defamation, outrage, and assault should be dismissed. Having reviewed the parties' submissions and determining that oral argument is not necessary for the disposition of this motion, the Court hereby GRANTS Defendants' motion in part and DENIES Defendants' motion in part. The reasons for the Court's order are set forth below.

## II. BACKGROUND

The following facts are set forth in a light most favorable to Plaintiffs:[2]

On May 15, 2003, Kitsap County Sheriff's Deputies Joshua Miller, Krista R. McDonald and Mark Gundrum responded to a 911 call reporting possible domestic violence in progress at Plaintiffs' address. The 911 dispatcher informed the deputies that neighbors reported hearing loud voices, glass breaking and seeing a car break through their fence.

After arriving at Plaintiffs' residence, Deputy McDonald contacted the neighbors, Deputy Miller contacted Christopher Armstrong, Lori Armstrong's son, and Lori Armstrong contacted Deputy Gundrum.

At first, Ms. Armstrong refused to speak with Deputy Gundrum, not wanting to involve the neighbors in her business. Deputy Gundrum again asked what happened, and Ms. Armstrong explained that her friend improperly towed a car and it ended up in the neighbor's fence. Deputy Gundrum accused Ms. Armstrong of being evasive. Deputy Gundrum also never asked Ms. Armstrong if she was a victim or perpetrator in the reported domestic violence. Displeased with Deputy Gundrum's demeanor, Ms. Armstrong walked away from Deputy Gundrum stating she intended to contact a sergeant or superior officer.

Deputy Gundrum called for Ms. Armstrong to stop. When Ms. Armstrong did not stop, he approached and detained her by grabbing her hair with his left hand and twisting her right arm around with

---

[2]Plaintiffs Lori Armstrong and Christopher Armstrong's factual accounts differ regarding Defendants' seizure and use of force on May 15, 2003. As a result, the following facts represent this Court's effort to reconstruct the events in a light most favorable to both Plaintiffs.

his right hand. Ms. Armstrong pulled away from Deputy Gundrum, informing him that her arm is disabled from a previous injury.

Deputy Gundrum gained control over Ms. Armstrong, forced her to the ground, escorted her back to the car that broke through the neighbor's fence, and slammed her against the hood while still holding her hands. Deputy Gundrum handcuffed Ms. Armstrong.

During this time, Deputy Miller questioned Mr. Armstrong, but never asked about his involvement in the reported domestic violence. When Mr. Armstrong saw Deputy Gundrum detain his mother, he ran towards them, but Deputy Miller grabbed his sweatshirt and held him against the fence while he calmed down. Mr. Armstrong informed Deputy Miller that his mother's arm is disabled. Deputy Miller then informed Deputy Gundrum about Ms. Armstrong's injury.

After speaking with the neighbors, Deputy McDonald climbed through the broken fence to assist Deputy Miller with Mr. Armstrong. Deputy Miller heard Ms. Armstrong complain about a shoulder injury and asked if she wanted an aid unit to respond. By the time Sgt. Hytinen arrived, a medic was present and attending to Ms. Armstrong.

Plaintiffs' complaint against Defendants alleges: 1) multiple §1983 claims, including excessive force and unlawful seizure; 2) violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments; 3) a cause of action for negligent hiring, training and supervision; 4) a cause of action for municipal liability; and 5) state claims for defamation, outrage and assault.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on

file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

## IV. DISCUSSION

A. <u>Motion to Strike</u>

Defendants move to strike Plaintiffs' summary judgment response as untimely. (Dkt. No. 83 at 1). Plaintiffs concede their response is untimely and attribute the delay to a calendaring mistake. (Dkt. No. 85 at 1).

While Defendants' timeliness arguments are properly noted, this Court will not strike Plaintiffs' claims, especially when Defendants filed a substantive reply. Accordingly, Defendants' motion to strike Plaintiffs' summary judgment as untimely is DENIED.

B. <u>42 U.S.C.§1983 Claims and Qualified Immunity</u>

Plaintiffs assert two specific 42 U.S.C. §1983[3] claims against Defendants for violating the Fourth Amendment: 1) Deputy Gundrum's unreasonable seizure and use of excessive force against Ms. Armstrong, and 2) Deputy Miller's unreasonable seizure and use of excessive force against Mr. Armstrong.

---

[3] Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State .. Subjects, or causes to be subjected, any citizen of the United States ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. §1983.

Plaintiffs also assert general §1983 claims against Deputy McDonald, Sgt. Hytinen, Sheriff Boyer and Kitsap County.

Defendants in a §1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular individual. *Id.* at 819. Even where material facts are in dispute as to the official's conduct, whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in litigation. *ActUp!Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right has been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *See Saucier v. Katz,* 533 U.S. 194, 205 (1994); *Kennedy v. City of Ridgefield,* 411 F.3d 1134, 1141 (9th Cir. 2005). In the second step, the court decides if the officers made a reasonable mistake about what the law requires. *Kennedy,* 411 F.3d at 1142; *see also, Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447, 1450 (9th Cir. 1995) (where the law is clearly established, the burden is on the defendant to prove that his or her actions were nonetheless reasonable).

The court now examines each alleged constitutional violation.

1. <u>Excessive Force - Deputy Gundrum</u>

Defendants argue summary judgment is appropriate because Deputy Gundrum's detainment methods were reasonable and, even if he used excessive force, he is qualifiedly immune for his actions. (Dkt. No. 77 at 23). Plaintiffs respond that Deputy Gundrum cannot reasonably believe he was justified in assaulting Ms. Armstrong. (Dkt. No. 82 at 14).

The Fourth Amendment's "objective reasonableness" standard governs §1983 excessive force claims. *Graham v. Conner,* 490 U.S. 386, 388 (1989); *Smith v. City of Hemet,* 394 F.3d 689, 700 (9th Cir. 2005). Determining whether force is reasonable under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." *Graham,* 490 U.S. at 396 (internal quotations omitted). The court must gauge the reasonableness of the force from the perspective of the officer on the scene rather than with 20/20 hindsight. *Id.*

The relevant factors used in determining the reasonableness of force include the nature of the crime involved, the threat the suspect posed, and whether the suspect was resisting arrest. *Id.* Because balancing the intrusion on an individual's Fourth Amendment interests against the government's interest "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment in excessive force cases should be "granted sparingly." *Smith,* 394 F.3d at 701 (*quoting Santos v. Gates,* 287 F.3d 846, 852 (9th Cir. 2002); *accord Liston v. County of Riverside,* 120 F.3d 965, 976 n.10 (9th Cir. 1997) (noting that the reasonableness of force is "ordinarily a question of fact for the jury"). If the evidence, viewed in the light most favorable to Plaintiffs, could support a finding of excessive force, granting summary judgment is not appropriate. *Smith,* 394 F.3d at 700.

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Deputy Gundrum used excessive force against Ms. Armstrong. Ms. Armstrong did object and walk away from Deputy Gundrum while he questioned her about the scene. Ms. Armstrong alleges, however, that Deputy Gundrum responded by grabbing her hair, twisting her disabled arm, forcing her to the ground, and slamming her onto a vehicle hood with her hands behind her back. Assuming Ms. Armstrong's allegations regarding Deputy Gundrum's use of force are true, his actions were excessive. Thus, the court turns to the next step in the qualified immunity analysis.

Again assuming Ms. Armstrong's allegations are true, no reasonable officer would believe Deputy Gundrum's conduct is lawful. Because there are too many disputed factual contentions surrounding Deputy Gundrum's actions, Defendants' motion for summary judgment on whether Deputy Gundrum is qualifiedly immune for his use of force is DENIED.

2. Excessive Force - Deputy Miller

Defendants argue that Deputy Miller did not use excessive force when detaining Mr. Armstrong. (Dkt. No. 77 at 17). Plaintiffs do not directly address Defendants' arguments.

It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable. *Alexander,* 64 F.3d at 1320.

Even viewing the evidence in the light most favorable to Plaintiffs, Deputy Miller's actions did not constitute excessive force. Deputy Miller grabbed Mr. Armstrong's sweatshirt and held him against a fence to prevent him from interfering with Deputy Gundrum detaining Ms. Armstrong. Deputy Miller released Mr. Armstrong when he calmed down. In their summary judgment response, Plaintiffs never mentioned Mr. Armstrong's detainment other than saying his seizure "forced him to watch his mother's assault without anyway to help." (Dkt. No. 82 at 8). This fact alone is insufficient to prevent summary judgment on Deputy Miller's excessive force. Accordingly, Defendants' motion for summary judgment on Deputy Miller's excessive force is GRANTED.

3. Unreasonable Seizure - Deputy Gundrum

Defendants argue that it was necessary to prevent Ms. Armstrong from walking away because Deputy Gundrum could not yet determine whether any criminal activity had taken place, whether Ms. Armstrong was a suspect or a victim, whether Ms. Armstrong had access to weapons, or whether Ms. Armstrong would be in danger if she left. (Dkt. No. 77 at 18). Plaintiffs respond that their police practices

expert, D.P. Van Blaricom, opines that Deputy Gundrum lacked reasonable suspicion to detain Ms. Armstrong. (Dkt. No. 82 at 14; Dkt. No. 81, Exhibit 7 at 107).

For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen. *See Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968); *Florida v. Bostick,* 501 U.S. 429, 434 (1991). Physically grabbing a suspect constitutes a seizure. *United States v. Sokolow,* 831 F.2d 1413 (9th Cir. 1987), *rev'd on other grounds,* 490 U.S. 1 (1989). When an encounter is voluntary, no constitutionally protected right is implicated. *Bostick,* 501 U.S. at 434. If, however, the stop is involuntary, it must be supported by reasonable suspicion based on articulable facts that criminal activity is afoot. *United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir. 1987). Further, it is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable. *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1320 (9th Cir. 1995).

Viewing the evidence in the light most favorable to Plaintiffs, a genuine issue of material fact exists on whether Deputy Gundrum improperly seized Ms. Armstrong. It was of course necessary for Deputy Gundrum to secure the scene and ensure his own safety. Assuming Plaintiffs' allegations are true, however, Ms. Armstrong informed Deputy Gundrum she was leaving to contact a sergeant or superior officer. Additionally, Plaintiffs' police practices expert opines that the deputies could not reasonably conclude a crime occurred. Because Deputy Gundrum's grounds for seizing Ms. Armstrong is a disputed question of fact for the jury, Defendants' motion for summary judgment on this issue is DENIED.

4. Unreasonable Seizure - Deputy Miller

Defendants argue that Mr. Armstrong's detainment was necessary to protect Deputy Gundrum. (Dkt. No. 77 at 17). Plaintiffs do not directly address this issue.

It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable. *Alexander,* 64 F.3d at 1320.

Even viewing the evidence in the light most favorable to him, Mr. Armstrong has not offered sufficient evidence that Deputy Miller's seizure violated his Fourth Amendment rights. Deputy Miller detained Mr. Armstrong and held him against a fence only after he ran to intervene with Deputy Gundrum detaining his mother. Deputy Miller's actions, therefore, were reasonable and necessary to protect Deputy Gundrum's safety. Accordingly, Defendants' motion for summary judgment on Deputy Miller's unreasonable seizure is GRANTED.

5. §1983 Claims[4] - Deputy McDonald

Defendants argue that Plaintiffs allege no facts or argument to establish a causal connection between Deputy McDonald's actions and Plaintiffs' alleged constitutional deprivations. (Dkt. No. 77 at 14). Plaintiffs' response is silent on this issue.

Failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim. *See Coufal Abogados v. AT&T, Inc.,* 223 F.3d 932, 937 (9th Cir. 2000); *Foster v. City of Fresno,* 392 F. Supp. 2d 1140, 1147 (E.D. Ca 2005). Because Plaintiffs fail to respond to Defendants' arguments in any fashion, Defendants' motion for summary judgment on Deputy McDonald's §1983 violations is GRANTED.

6. §1983 Claims - Sgt. Hytinen

Defendants argue that Plaintiffs fail to establish that Sgt. Hytinen's actions were either wrongful or connected to their alleged constitutional deprivations. (Dkt. No. 77 at 13). Plaintiffs' response only

---

[4]It is true that Plaintiffs articulate specific allegations against Deputies Gundrum and Miller for violating their Fourth Amendment rights to be free from unlawful seizure and excessive force. Plaintiffs' complaint and summary judgment response fail, however, to articulate specific §1983 claims against Deputy McDonald, Sgt. Hytinen, and Sheriff Boyer. Accordingly, this Court will refer to the vague allegations against Deputy McDonald, Sgt. Hytinen, and Sheriff Boyer as §1983 claims.

mentions Sgt. Hytinen in the background facts and states that he improperly delayed investigating the deputies for wrongful conduct. (Dkt. No. 82 at 9).

The doctrine of respondeat superior cannot be used to impose §1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 691 (1978). Supervisory liability will be found, however, if there exists either "(1) his or her personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *cert. denied,* 502 U.S. 1074 (1992) (citations omitted).

Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not offered sufficient evidence that Sgt. Hytinen violated their constitutional rights. As an initial matter, no evidence exists that Sgt. Hytinen was personally involved in the constitutional deprivations because he arrived at Plaintiffs' residence after the alleged §1983 claims took place. The next step then is to examine whether a causal connection exists between Sgt. Hytinen's conduct and the alleged constitutional violations.

At most, Plaintiffs assert in their background facts that Sgt. Hytinen took excessively long to complete his investigation on whether the deputies violated Plaintiffs' constitutional rights. Because this fact fails to address how else Sgt. Hytinen is connected to Plaintiffs' constitutional deprivations, Defendants' motion for summary judgment on Sgt. Hytinen's §1983 claims is GRANTED.

7. <u>§1983 Claims - Sheriff Steven Boyer</u>

Defendants argue that Plaintiffs allege no actions by Sheriff Boyer that violated their rights to be free from excessive force and unreasonable seizure. (Dkt. No. 77 at 12). Plaintiffs respond that Sheriff Boyer's reckless refusal to discipline his officers strips his qualified immunity. (Dkt. No. 82 at 15).

Sheriffs may not be held vicariously liable for the acts of their subordinates and may only be liable if one of their own actions violated one of the Civil Rights in question. *See Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir. 1971); *Rundle v. Madigan,* 356 F. Supp. 1048, 1050 (D.C. Cal. 1972).

Here, Plaintiffs present no evidence that Sheriff Boyer violated their constitutional rights. To be sure, Plaintiffs do allege that Sheriff Boyer's reckless refusal to discipline his officers strip his qualified immunity. These allegations, however, do not contain any law or facts demonstrating how Sheriff Boyer is personally liable for Plaintiffs' §1983 constitutional deprivation claims. Accordingly, Defendants' motion for summary judgment on Sheriff Boyer's §1983 claims is GRANTED.

C. <u>Negligent Hiring, Training and Supervision</u>

Defendants argue that Plaintiffs fail to present any evidence in support of their state law claim for negligent hiring, training, and supervision. (Dkt. No. 77 at 24). Plaintiffs concede dismissal of the negligent hire/retention claim. Plaintiffs' response is silent, however, on negligent training and supervision.

The failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim. *See Coufal Abogados,* 223 F.3d at 937; *Foster,* 392 F. Supp. 2d at 1147. Because Plaintiffs fail to respond to Defendants' arguments in any fashion, Defendants' motion for summary judgment on negligent hiring, training and supervision is GRANTED.

D. <u>Defamation</u>

Defendants argue that Plaintiffs fail to satisfy the elements for their state law claim for defamation. (Dkt. No. 77 at 24). Plaintiffs' response is silent on this issue.

Again, failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim. *See Coufal Abogados,* 223 F.3d at 937; *Foster,* 392 F. Supp. 2d at 1147. Because Plaintiffs fail to respond to Defendants' arguments in any fashion, Defendants' motion for summary judgment on defamation is GRANTED.

E. Outrage

Defendants argue that Plaintiffs cannot show that the deputies, Sgt. Hytinen, Sheriff Boyer, or Kitsap County engaged in conduct so extreme and atrocious as to satisfy Plaintiffs' state law claim for outrage.[5] (Dkt. No. 77 at 26). Plaintiff responds that the facts support that Defendants' conduct was atrocious. (Dkt. No. 82 at 16).

The elements for the tort of outrage are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Birklid v. Boeing Co.,* 127 Wn.2d 853, 867, 904 P.2d 278 (1995) (citations omitted). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*; see, e.g., *Seaman v. Karr,* 114 Wn. App. 665, 59 P.3d 701, 710-711 (2002) (holding that outrage claim survived summary judgment where law enforcement mistakenly invaded wrong house with machine guns and flash-bang grenades, set the carpet on fire, knocked an elderly resident to the ground and threatened to kill him if he moved, painfully handcuffed the innocent resident and refused to admit their mistake). Whether the conduct is sufficiently outrageous may be in certain circumstances a question for the jury. However, the Court initially determines if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Phillips v. Hardwick,* 29 Wn. App. 382, 387, 628 P.2d 506 (1981).

In determining whether an outrage claim should go to the jury, a relevant consideration for the court is the relationship between the parties. *Keates v. City of Vancouver,* 73 Wn. App. 257, 264, 869 P.2d 88 (1994) (citations omitted); *Phillips,* 29 Wn. App. at 388. Here, the Defendants are Kitsap County

---

[5]The tort of outrage is also known as "intentional infliction of emotional distress." *See Rice v. Janovich,* 109 Wn.2d 48, 61, 742 P.2d 1230 (1987).

Sheriffs. The fact that they hold a position of authority over Plaintiffs is a factor the Court considers in reviewing Plaintiffs' outrage claim.

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Deputy Gundrum's actions of grabbing Ms. Armstrong's hair, twisting her disabled arm, forcing her to the ground, and slamming her onto a vehicle hood with her hands behind her back rise to the level of indecency, atrocity and intolerability that the tort of outrage requires. Accordingly, Defendants' motion for summary judgment on Plaintiffs' outrage claim is DENIED.

F. Assault

Defendants argue that Plaintiffs' assault claims must fail because: 1) they provide no facts to support a claim that Defendants Boyer, Hytinen or McDonald committed assault; 2) Kitsap County cannot be liable for a sheriffs willful and intentional assault; and 3) Deputies Gundrum and Miller's use of force was reasonable. (Dkt. No. 77 at 27). Plaintiffs respond that Deputy Gundrum cannot reasonably believe he was justified in assaulting Ms. Armstrong.

A battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent. An assault is any act of such a nature that causes apprehension of a battery." *McKinney v. City of Tukwila,* 103 Wn. App. 391, 409, 13 P.3d 631 (2000).

Based upon this court's excessive force analysis above, a genuine issue of material fact exists on whether Deputy Gundrum used excessive force. Accordingly, Defendants' motion for summary judgment on Plaintiffs' assault claim against Deputy Gundrum is DENIED. Because Kitsap County cannot be liable for an officers willful and intentional assault, Defendants' motion for summary judgment on Plaintiffs' assault claim against Kitsap County is GRANTED. And because Plaintiffs have provided no facts to support a claim that the remaining officers committed assault, Defendants' motion for summary judgment

on Plaintiffs' remaining assault claims is GRANTED.

G. <u>Municipal Liability</u>

Defendants argue that Plaintiffs fail to allege or identify a policy or custom that led to a constitutional deprivation. (Dkt. No. 77 at 12). Plaintiffs respond that their police practices expert, D.P. Van Blaricom, found a custom or practice in Kitsap County to condone officers' misconduct and deprivation of citizen rights. (Dkt. No. 82 at 15).

A municipality such as a county and its policy department may not be held liable unless its policy or custom caused the constitutional injury. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166 (1978); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Thus, as a matter of law, Plaintiffs' claim cannot succeed unless they specify the policy or custom that is pertinent to their alleged injury, and they explain how the policy or custom caused their injury. *Sadowski v. Mosley,* 435 F.3d 1076, 1080 (9th Cir.) *cert. denied,* 126 S. Ct. 2864 (2006).

Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have offered sufficient evidence to raise genuine issues of material fact on whether Kitsap County engaged in a custom, practice or policy of condoning deputy misconduct. Specifically, Plaintiffs' police practices expert points to the following information supporting this conclusion: 1) four previous complaint investigations against Deputy Gundrum, Deputy Hytinen, and Deputy Miller; 2) Kitsap County's conclusion that there were no conduct violations by the deputies and; 3) Kitsap County's retaliation with criminal prosecution. Because Kitsap County's alleged engagement in customs, practices and polices of condoning officer misconduct is a disputed question of fact for the jury, Defendants' motion for summary judgment on Plaintiffs' municipal liability claim is DENIED.[6]

---

[6]The Court advises Plaintiffs to heed the admonition issued by the Honorable Judge Nelson in *Yartzoff v. Thomas,* 809 F.2d 1371, 1377-78 (9th Cir. 1987):
Our holding that summary judgment was inappropriate on [municipal liability], however, should not embolden [Plaintiffs] in their hopes of succeeding at trial. In the face of strong evidence presented by [Defendants], [Plaintiffs'] evidence appears weak. Their claims taken as a whole contain many indicia of spuriousness, and they should be cautioned by the costs of litigation.

H. <u>First, Fifth, Sixth, Eighth, and Fourteenth Amendment Violations</u>

Defendants argue that Plaintiffs fail to present any evidence supporting their claims based on violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Dkt. No. 77 at 10). Plaintiffs' response is silent on this issue.

Even if a constitutional right has been articulated, "sweeping conclusory allegations will not suffice to prevent summary judgment." *See Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1998). And, as stated, failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim. *See Coufal Abogados,* 223 F.3d at 937; *Foster,* 392 F. Supp. 2d at 1147.

Here, Plaintiffs' complaint claims Defendants' behavior violated their First, Fifth, Sixth, Eighth and Fourteenth Amendment rights but provides no specific constitutional grounds and no further explanation to support their claims. Accordingly, Defendants' motion for summary judgment on violations of the First, Fifth, Sixth, Eighth and Fourteenth Amendments is GRANTED.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court ORDERS the following:

1. Defendants' motion to strike Plaintiffs' summary judgment response as untimely is DENIED.
2. Defendants' motion for summary judgment on whether Deputy Gundrum is entitled to qualified immunity for his use of force is DENIED.
3. Defendants' motion for summary judgment on whether Deputy Miller is entitled to qualified immunity for his use of force is GRANTED.
4. Defendants' motion for summary judgment on whether Deputy Gundrum lawfully seized Lori Armstrong is DENIED.
5. Defendants' motion for summary judgment on whether Deputy Miller lawfully seized Christopher Armstrong is GRANTED.
6. Defendants' motion for summary judgment on Plaintiffs' §1983 claims against Deputy McDonald is GRANTED.

7. Defendants' motion for summary judgment on Plaintiffs' §1983 claims against Sgt. Hytinen is GRANTED.

8. Defendants' motion for summary judgment on Plaintiffs' §1983 claims against Sheriff Steven Boyer is GRANTED.

9. Defendants' motion for summary judgment on negligent hiring, training and supervision is GRANTED.

10. Defendants' motion for summary judgment on Plaintiffs' defamation claim is GRANTED.

11. Defendants' motion for summary judgment on Plaintiffs' outrage claims is DENIED.

12. Defendants' motion for summary judgment on Plaintiffs' assault claim against Deputy Gundrum is DENIED.

13. Defendants' motion for summary judgment on Plaintiffs' assault claims against remaining Defendants is GRANTED.

14. Defendants' motion for summary judgment on Plaintiffs' municipal liability claim is DENIED.

15. Defendants' motion for summary judgment on Plaintiffs' claims for First, Fifth, Sixth, Eighth, and Fourteenth Amendment violations is GRANTED.

DATED this 2nd day of November, 2006

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE